**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**v.**

**AFFIDAVIT**

**PHILLIP WHITE**                                                                                            **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I, Travis R. Steward, being duly sworn, do hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am employed as a Task Force Officer ("TFO") with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been such since October, 2021. I am currently assigned to the Lexington Resident Office ("LRO") Enforcement Group in Lexington, Kentucky.   My current duty assignment includes, but is not limited to, investigating complex drug conspiracies, and organizations and individuals involved in the trafficking of controlled substances.  Prior to my current assignment with the DEA, I was a Police Officer for the Nicholasville Police Department for a period of approximately 6 years. During my employment at the Nicholasville Police Department, I specifically worked narcotics investigations as a detective for approximately 1.5 years.  I am now employed by the Jessamine County Sheriff's Office and have been a narcotics detective for approximately 5 years.  I am authorized and have the responsibility to investigate persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering (18 U.S.C. § 1956 and 1957), and illegal

1

possession of weapons (18 U.S.C. §§ 922 and 924(c)(1)).  In my capacity as a DEA TFO, I am authorized to arrest persons for violations of federal law, including for those offenses listed above.

2.    This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state and local law enforcement officers during the course of their official duties.  The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause.

3.    I have participated in drug investigations, including possession and distribution of fentanyl, marijuana, cocaine, heroin, methamphetamine, and other drugs. Through my training, education and experience, I have become familiar with the manner in which persons involved in the trafficking of controlled substances conduct their illicit activities, and their methods of operation and attempts to avoid detection from law enforcement. Specifically:

   a. I have conducted street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   b. I am familiar with the appearance and street names of various drugs, including, heroin, fentanyl, cocaine, cocaine base (crack cocaine), methamphetamine, marijuana and other substances;

   c. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

   d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

2

e. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

f. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry; and

g. I have consulted with Special Agents and Task Force Officers who have extensive experience in this field, and they have provided me with guidance and knowledge regarding surveillance operations and drug investigations; and

h. I have worked in an undercover capacity in order to identify targets of investigations related to drug trafficking.

4. The investigation to date indicates that there is probable cause to believe that on January 15th, 2026 in Fayette County, in the Eastern District of Kentucky, Phillip White did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841; possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possess a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). The following facts support the finding of probable cause.

## PROBABLE CAUSE

5. In late 2025 (date known to law enforcement but excluded herein to shield the identities of any confidential sources), members of the DEA LRO began an investigation into Phillip White ("White"), who was suspected of significant fentanyl and methamphetamine trafficking in the central Kentucky area based on information gleaned through previous investigations as well as reports from confidential sources. During the course of this investigation, members of the DEA identified:

3

a. a white Chevrolet Silverado High Country pickup truck ("the Chevy pickup") as being White's primary vehicle;

b. 537 VonBryan Trace Lexington, Kentucky ("the VonBryan address") as being White's actual residence;

c. 640 Hidden Point Drive Lexington, Kentucky ("the Hidden Point address") as being a narcotics trafficking and suspected stash location for White's narcotics supply;[1] and

d. 859-693-3578 ("the 3578 account") as White's telephone number.

6. In late 2025, your affiant applied for and was granted a state of Kentucky search warrant to obtain the geo-location data for the 3578 account, and AT&T began providing the data soon thereafter. DEA LRO compared this geo-location information with observations of White's location obtained through physical surveillance, confirming that White used the 3578 account.

7. In late 2025, your affiant applied for and was granted a state of Kentucky search warrant to place a GPS tracking device on the Chevy pickup. Shortly thereafter, members of the DEA executed the search warrant by affixing a GPS tracking device to the vehicle while it was located at the VonBryan address.

8. Through the use of the GPS tracking device and physical surveillance, your affiant observed that White traveled to the Hidden Point address almost daily. Using the same methods, your affiant confirmed that White, along with the Chevy pickup, stayed at the VonBryan address nightly.

---

[1] Through training and experience, your affiant knows that it is common for large scale narcotics traffickers to utilize third-party locations to store their narcotics supply, allowing them to insulate themselves from criminal liability by adding a layer of separation from their product and themselves.

4

9.      DEA developed probable cause for the VonBryan address and the Hidden Point address. Your affiant applied for and was granted a state of Kentucky search warrant to search both of the above premises, along with White's person and the Chevy pickup.

10.     On January 15th, 2026, members of the DEA conducted surveillance of Phillip White and observed him arriving at the Hidden Point address in the Chevy pickup. DEA then executed the state search warrant at that location, making entry after knocking and announcing. DEA located White in a bathroom near the kitchen. DEA also located three other subjects, including one juvenile, on the premises.

11.     A search of White's person revealed a bag containing approximately 9 grams of suspected fentanyl.

12.     The search of the Hidden Point address revealed:

    a.  approximately 226.7 grams of suspected fentanyl in the closet of "Bedroom 1;"

    b.  a SCCY CPX1 handgun, serial # C138851, located in a drawer just outside of the closet in Bedroom 1 (where the suspected fentanyl was located);

    c.  a loaded and chambered micro DRACO firearm, serial #ROA24PMD61449 ("DRACO"), on top of the kitchen cabinet;

    d.  a bag of suspected cutting agent on top of the kitchen cabinet, located directly beside the DRACO firearm;

    e.  vacuum sealed bags, sandwich bags, a blender, a digital scale, and kilo-press located in a kitchen cabinet, below the DRACO firearm.

13.     All of the narcotics processing equipment was within arms reach of the loaded and chambered DRACO.

14.     All of the firearms in this case were released on scene to ATF.

15.     Your affiant was notified by ATF Special Agent Ryan Caudill that the above listed DRACO was manufactured outside of Kentucky and affected interstate commerce.

16.     All of the listed narcotics have been sent to the DEA Lab for analysis.

17.     Members of the DEA then executed a state search warrant at the VonBryan address, making entry after knocking and announcing.  Located in the house were two females, including one juvenile.  Lexington Police Detective Corey Vinlove located a black semi-automatic AR-15 style rifle on a wire shelf in the master bedroom (assigned as Bedroom # 2), covered by some articles of clothing but easily accessible.  This firearm was an Anderson Arms, model AM-15, .223 semi-automatic rifle, black in color, bearing serial # 20262824 ("Anderson Arms rifle").  This firearm was discovered to be loaded with unspent ammunition in the magazine and one in the chamber.  Also located in this same bedroom was a black duffel bag containing an empty large capacity magazine for a semi-automatic rifle.  In addition, a digital scale was also located in the side pocket of the duffel bag.

18.     The Anderson Arms rifle was manufactured in Ohio and moved in/affected interstate commerce.

19.      Your affiant, TFO Tom Clements, and FBI SA Robinson then conducted an interview of Phillip White at the DEA Lexington Resident Office. After receiving a right advisement, White agreed to speak with investigators. Regarding the Anderson Arms rifle, White conceded that he knew the rifle was in the house and that he possessed it because it was his constitutional right. White also mentioned a concern relating to personal protection. White then advised that he wanted to talk to his attorney because he was confused about a lot of stuff. TFO Clements asked what he was confused about and that maybe TFO Clements could clarify

6

something. White then referenced law enforcement finding a pink gun at the Hidden Point address that, purportedly, did not belong to him and that law enforcement was trying to put on him. Law enforcement never referenced the pink gun, indicating White's prior knowledge of the firearm at the Hidden Point address. Questioning was then completed.

20.    White is a convicted felon and is prohibited from possessing firearms. He most recently received a felony conviction for trafficking cocaine in Fayette County Circuit Court, Case No. 20-CR-00087.

21.    In conclusion, members of the DEA LRO identified White as a significant narcotics trafficker in the central Kentucky area.  DEA LRO identified White's residence (the VonBryan address) and his "stash" house (the Hidden Point address). DEA conducted state search warrants at both of these locations and located a large quantity of suspected fentanyl at the Hidden Point address, firearms at both the Hidden Point address and the VonBryan address, and suspected fentanyl on White's person.

22.    The amount of suspected fentanyl that was located at the Hidden Point address is not a personal-use amount of fentanyl, being equivalent to approximately 1,178 dosage units of fentanyl.[2]

<b><u>CONCLUSION</u></b>

23.    I believe that the facts set forth above support that there is probable cause to believe that on or about January 15, 2026 in Fayette County, in the Eastern District of Kentucky, Phillip White did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance, in violation of

---

[2] Your affiant has conducted numerous interviews of narcotics addicts, specifically fentanyl users, during drug investigations and knows that a typical dosage unit of fentanyl is approximately 2/10ths of a gram.

21 U.S.C. § 841;  possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possess a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)

I declare under the penalty of perjury that the above statement is true and correct to the best of my knowledge, information, and belief.

_____/s/ Travis R. Steward_____

Travis R. Steward, Task Force Officer
Drug Enforcement Administration

Sworn to before me on _____January 16_____, 2026.

_____

MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE

8